No. 54,924

STATE OF KANSAS, *Appellant,* v. THOMAS W. ZIMMERMAN and PHILIP MARK SCHMIDT, *Appellees.*

(660 P.2d 960)

Opinion filed March 26, 1983.

*Robert T. Stephan,* attorney general, and *John C. Herman,* county attorney, were on the brief for the appellant.

*Donald F. Hoffman,* of Dreiling, Bieker & Kelley, of Hays, was on the brief for the appellee, Thomas W. Zimmerman.

*Ross Wichman,* of Kent, Wichman & Anderson, of Hays, was on the brief for the appellee, Philip Mark Schmidt.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is a criminal appeal by the State from an order of the Ellis County District Court dismissing a complaint charging Thomas W. Zimmerman and Philip Mark Schmidt (defendants-appellees) with burglary (K.S.A. 21-3715). At the close of the preliminary hearing the district court ruled the element of entry had not been shown by the State and ordered that the charge be dismissed.

The following evidence was presented by the State at the preliminary hearing. In the late afternoon on August 5, 1982, Terry Karlin arrived at B & S Distributors, a wholesale beer distributorship in Hays, Kansas, to visit one of the employees. Two employees, Jim Mall and Neil Schmidt, had just finished loading the beer delivery truck for the next day's deliveries, and were cleaning up in the warehouse. The beer delivery truck was parked along the street in front of the garage door of the warehouse.

Upon arriving at the warehouse Terry Karlin observed defendant Philip Mark Schmidt carrying "at least a couple" of cases of "Black Label" brand beer across a parking lot east of the warehouse. As Karlin was walking toward the door of the warehouse he also noticed defendant Tom Zimmerman sitting in a car parked in a parking lot west of the warehouse.

Shortly after Karlin's arrival, while working in the back of the warehouse, Jim Mall saw defendant Schmidt through an open door walking west down an alley behind the warehouse. Looking closer, Mall observed that Schmidt was carrying cases of Black Label beer. Mall informed Neil Schmidt they had been "ripped off." Neil Schmidt ran into the alley and obtained the license tag number of a car going down the alley. Earlier, Neil Schmidt had observed Tom Zimmerman sitting in a car near the alley in the parking lot west of the warehouse. The license tag number of the car seen by Neil Schmidt going down the alley belonged to Tom Zimmerman.

Jim Mall then examined the beer delivery truck and found one of the bay doors open on the side of the truck facing the street. That particular bay compartment contained Black Label brand beer. It was determined three cases of Black Label beer were missing.

Neil Schmidt and Jim Mall testified that when the delivery truck was loaded each day the bay compartments on the side of the truck facing the warehouse were loaded first, and then those bay doors were closed and the truck turned around for the other side to be loaded. The bay doors are an overhead type door located on each side of the truck and are part of the truck itself. On the day of the alleged burglary, Neil Schmidt had loaded the side of the truck where the Black Label beer was contained and turned the truck around. He testified he was certain all the bay

doors on both sides of the truck were closed that particular day, but not locked. On cross-examination he testified he was positive the bay doors were closed because it was routine procedure for the doors to be closed before turning the truck around so the side facing the street would always have the doors closed on it, and because he had to walk by the bays to turn the truck around and would have noticed if a door had been left open. He also testified there were times when both employees were in the warehouse and no one was watching the truck, and times when beer was left in the doorway of the warehouse for a few minutes.

Shortly after the police were notified of the alleged burglary defendants Zimmerman and Schmidt were located in Zimmerman's car. A search of the car produced three cases of Black Label brand beer. Jim Mall testified the beer recovered by police was similar to that taken from the truck. A complaint was filed charging defendant Schmidt with burglary of a motor vehicle in count one and with theft in count two (K.S.A. 21-3701). Defendant Zimmerman was charged with aiding and abetting on both counts.

At the close of the State's evidence the defendants moved that the felony burglary charge be dismissed. The defendants argued that the testimony by Neil Schmidt that he was positive the bay doors on the truck were closed because it was his habit to close them, and the fact that one door was found open, was insufficient to show the element of entry. Further, there was no evidence Mark Schmidt had been seen near the truck. Sustaining the defendant's motion, the court ruled that the element of entry was missing. The court directed, however, that trial be set for the theft charge.

At the outset the appellees challenge the State's right to pursue this appeal under the provisions of K.S.A. 22-3602(b). The right to appeal is jurisdictional and therefore must be considered. K.S.A. 22-3602(b) provides in part:

"Appeals to the supreme court may be taken by the prosecution from cases before a district judge or associate district judge as a matter of right in the following cases, and no others:

"(1) From an order dismissing a complaint, information or indictment."

The right to appeal is statutory only, and appeals by the prosecution as a matter of right after a final judgment are allowed only

in the three situations set forth in K.S.A. 22-3602(*b*) and no others. *State v. Crozier*, 225 Kan. 120, 122, 587 P.2d 331 (1978).

Directing the court's attention to the rule that the prosecution may refile a complaint after the discharge of a defendant resulting from a preliminary hearing, the appellees contend the State should not be authorized to elect between the two remedies available to it of either refiling the complaint and proceeding to a new preliminary examination or appealing the dismissal of the complaint. The appellees point out that a defendant has no right to appeal from a pretrial order denying his motion to quash an indictment or information filed against him, and suggest it is therefore unfair to allow the State to appeal from an order dismissing a complaint where the right to refile the complaint exists.

In support of this proposition the appellees rely on *State v. McCombs*, 164 Kan. 334, 188 P.2d 922 (1948), which held the State had no right of appeal from an order of an examining magistrate dismissing a person charged with a crime following a preliminary examination. This case was decided under statutes applicable prior to our new code of criminal procedure and has no application under the present code.

Under our present code of criminal procedure the term "magistrate" has been defined to include only appellate court judges and judges of the district courts. K.S.A. 22-2202(12). Every person arrested on a warrant charging a felony is entitled to a preliminary hearing before a magistrate under K.S.A. 22-2902, unless such warrant has been issued as a result of an indictment by a grand jury. Where a magistrate does not find probable cause to bind a defendant over for trial the defendant is to be discharged. Appeals by the prosecution as a matter of right are afforded by K.S.A. 22-3602(*b*) from any *order of a district judge or associate district judge dismissing a complaint,* information or indictment. In the present case the burglary count in the complaint was dismissed by an associate district judge of the district court of Ellis County. It has long been held the State may appeal from an order quashing or setting aside one count of an information, although another count charging a different act is held sufficient or is not attacked. See *State v. Levine*, 125 Kan. 360, 362, 264 Pac. 38 (1928); *State v. Lumber Co.*, 83 Kan. 399, Syl. ¶ 1, 111 Pac. 484 (1910).

This appeal from the order of the district court dismissing the

burglary count in the complaint is expressly authorized by statute as a matter of right. The possibility that the State may choose not to appeal the district court's order and instead refile the complaint should additional witnesses or new evidence be procured does not alter the right to appeal clearly authorized by the statute. It neither contemplates nor requires, as the appellees contend, that an appeal may only be perfected where a complaint, dismissed during pretrial procedures, cannot be refiled. We are mindful of the rule of statutory construction that penal statutes must be strictly construed in favor of the persons sought to be subjected to their operations, which simply means that ordinary words are to be given their ordinary meaning. Such a statute should not be read to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs,* 228 Kan. 595, 597, 618 P.2d 1176 (1980). The rule does not permit or justify a disregard of manifest legislative intention appearing from plain and unambiguous language. *State v. Howard,* 221 Kan. 51, 54, 557 P.2d 1280 (1976).

Criminal defendants are not given the right to appeal intermediate pretrial orders. This avoids piecemeal prosecution of the crimes charged and also prevents unnecessary delay in the judicial process. A defendant has the right to appeal such intermediate orders after a final judgment has been entered against him. See *State v. Wallace,* 172 Kan. 734, Syl. ¶ 2, 243 P.2d 216 (1952); K.S.A. 22-3602(*a*). The dismissal of a complaint in a criminal prosecution is a final order and precludes further prosecution of the defendant unless the State should overcome the reasons for the prior dismissal at a subsequent preliminary examination on a refiled complaint. To require the State to refile a dismissed complaint before taking an appeal from the order of dismissal, where there is little or no likelihood of achieving a different result on the refiled complaint, would not only be contrary to the clear direction of K.S.A. 22-3602(*b*), but would serve only to further crowd district court dockets and unnecessarily burden the State's resources. The appellees' challenge to the jurisdiction of this court to hear the State's appeal in this case has no merit.

The key issue presented on appeal is whether the trial court

erred in ruling that an entry, as a required element of burglary under K.S.A. 21-3715, was not shown by the evidence set forth above. K.S.A. 21-3715 provides:

"Burglary is knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein."

The State contends the action of opening the bay door of the truck and reaching in the bay compartment to remove the cases of beer constitutes an entry within the purview of K.S.A. 21-3715. The statute does not define "entering into," nor does it indicate what part of a vehicle must be entered to constitute a burglary. This court has been called upon in numerous cases to determine whether sufficient entry has been shown by the evidence to support a conviction of burglary. In a case similar to the one at hand, it was held there was sufficient evidence of entry where the defendant stuck his arm through a slit in the roof of a convertible, ostensibly to remove a purse lying in plain view on the seat. *State v. Ervin*, 223 Kan. 201, 202, 573 P.2d 600 (1977). In so holding the court relied on the definition of entry from Black's Law Dictionary at p. 627 (4th ed. rev. 1968), where the rule is stated:

"In cases of burglary, the least entry with the whole or any part of the body, hand, or foot, or with any instrument or weapon, introduced for the purpose of committing a felony, is sufficient to complete the offense."

Other cases in this jurisdiction have considered what constitutes a sufficient entry into a dwelling place. In *State v. Gatewood*, 169 Kan. 679, 683, 221 P.2d 392 (1950), the court held the elements of breaking and entering were shown where the defendant opened an outer screen door and partially entered his hand and arm in an unsuccessful attempt to unlock the inside door with a key. The court quoted from 9 Am. Jur., Burglary § 16:

"Literally, entry is the act of going into the place after a breach has been affected, but the word has a broader significance in the law of burglary, for it is not confined to the intrusion of the whole body, but may consist of the insertion of any part for the purpose of committing a felony. An entry is accomplished by putting through the place broken the hand, the foot, or any instrument with which it is intended to commit a felony."

See also 13 Am. Jur. 2d, Burglary § 10; 12A C.J.S., Burglary § 22a. Recently we held the removal of a storm window from a house

without actually raising or disturbing the inside window was sufficient evidence of entry to support a conviction of aggravated burglary in *State v. Crease,* 230 Kan. 541, 542, 638 P.2d 939 (1982).

Like Kansas, many other jurisdictions have enlarged the crime of burglary by providing that motor vehicles may be the subject of the crime. Consequently, what constitutes the breaking and entering of a motor vehicle under the facts of a particular case has been litigated on several occasions. See Annot., Burglary or breaking and entering of motor vehicle, 79 A.L.R.2d 286, and Later Case Service. In *Houchin v. State,* 473 P.2d 925, 927 (Okla. Crim. 1970), a box containing a television set was removed from the trunk of a car where the trunk lid had been fastened over the box with a nylon cord. The court held there was an entry where the cord had been severed and it was apparent the defendant had to place his hands inside the trunk in order to remove the box.

In *State v. Pierre,* 320 So. 2d 185, 188 (La. 1975), the court held there was sufficient entry into a vehicle to support a burglary conviction where the hood of the vehicle was opened and the battery stolen from the engine compartment.

The court in *Bragg v. State,* 371 So. 2d 1082, 1083 (Fla. Dist. Ct. App. 1979), rejected the defendant's contention that the Florida statute defining burglary as the "entering or remaining in a structure or a conveyance with the intent to commit an offense therein," required the entry to be into the passenger compartment of the vehicle. Another statute defined "to enter a conveyance" as including the "taking apart any portion of the conveyance." The court held the burglary statute did not distinguish between the engine compartment, passenger compartment, or the trunk in prohibiting the unauthorized entry of a motor vehicle.

However, the removal of hubcaps from a vehicle was not found to constitute a burglary in *State v. Hankins,* 376 So. 2d 285, (Fla. Dist. Ct. App. 1979), as there was no evidence the defendant intended to commit an offense *within* the vehicle, as required by statute. Similarly, in *Smith v. District Court,* 75 Nev. 526, 347 P.2d 526 (1959), it was held that to hold one's hand over the unenclosed platform body of a truck did not constitute a sufficient entry into a motor vehicle to support a charge of burglary.

In the present case, Neil Schmidt testified the bay door cov-

ering the compartment containing the brand of beer stolen had been closed after the compartment was loaded. Both employees testified that the bay doors on the side of the truck facing the street were closed at all times. When it was suspected that some beer had been taken, the bay door in question on the street side of the truck was found open and three cases of beer were determined to be missing. Obviously, the perpetrator of the crime had to reach a hand or arm into the bay compartment in order to remove the beer from the truck. As noted in *State v. Nesmith,* 220 Kan. 146, 150, 551 P.2d 896 (1976), entry, like any element of a crime, can be proven by circumstantial evidence.

It is the duty of a magistrate conducting a preliminary hearing to determine only whether from the evidence a crime has been committed and whether there is probable cause to believe the accused committed it. K.S.A. 22-2902(3); *State v. Ramsey,* 228 Kan. 127, 131-32, 612 P.2d 603 (1980). It is a well-established principle of law that it is the prerogative of the jury to determine the credibility of the witnesses, the weight to be given the evidence, and to draw all reasonable inferences from the evidence. *State v. Fenton,* 228 Kan. 658, 666, 620 P.2d 813 (1980). Where the evidence tends to disclose that the offense charged was committed and the defendant committed it, the question is one for the jury to decide, even though the evidence is weak. *State v. Townsend,* 201 Kan. 122, Syl. ¶ 3, 439 P.2d 70 (1968).

We conclude that sufficient evidence was presented from which a jury could find there was an entry into the truck to support a conviction under K.S.A. 21-3715. The trial court therefore erred in ruling that no entry had been shown by the evidence and dismissing the complaint against the appellees.

The decision of the lower court is reversed and the case is remanded.