No. 25,482.

THE STATE OF KANSAS, *Appellee,* v. CLINT BOWEN, *Appellant.*

SYLLABUS BY THE COURT.

HOMICIDE—*Assault With Intent to Kill—Erroneous Instructions.* In an action
charging the defendant with assault with intent to kill, the proceedings
considered, and *held,* the instructions were sufficiently erroneous and
prejudicial to require the granting of a new trial.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion
filed March 7, 1925. Reversed.

*C. E. Branine, H. R. Branine,* and *W. D. Harrison,* all of Hutchinson, for
the appellant.

*Charles B. Griffith,* attorney-general, *Frank C. Baldwin,* assistant attorney-
general, and *H. F. Brown,* county attorney, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a conviction on a
charge of assault with intent to kill.

The facts were substantially as follows: On the night of August
18, 1923, Ed Cunningham, a police officer of the city of Hutchinson,
was dangerously wounded by the defendant in the yard of one Mrs.
Lucile Dixon. The defendant lived with his family about two
blocks north of the Dixon place. His story was that, about 11:30
o'clock on the night in question, when downtown, he was given
some medicine by a physician to take to Mrs. Dixon; that Mrs.
Dixon lived alone with her nine-year-old boy; that she had been
sick for several days; that he (defendant) took the medicine to
her; that shortly after his arrival at her house three other men
came; that later two Smith boys came in a Ford car; that Mrs.
Dixon being sick, the defendant answered their knock at the door;
that they asked if they could get some whisky; that he told them
there was no whisky there, but that he knew a place where they
could perhaps get some. One of the Smiths remained while the
defendant went with the other some blocks away in the Ford; that
he (defendant) returned to the house alone and almost immedi-
ately thereafter told Mrs. Dixon that someone had been shadowing
him; that he was going out to see who was prowling around and what
they wanted; that he had his pistol with him and went out of the
door and advanced but a few feet when the shooting began. The
time was about midnight, the night very dark.

It appears that the city officers suspected that liquor was being handled from the Dixon place, and about 12 o'clock on the night in question Ed Cunningham, in company with another officer and the "Smith boys," who were acting as "spotters" working for the city, went to the Dixon place. Cunningham was dressed in plain clothes. They had a search warrant for the place, but no warrant for the defendant. When the defendant had advanced a few steps from the house into the darkness, Cunningham, who had been secreted, threw a flashlight into the defendant's face and commanded him to throw up his hands. Instead of doing so, the defendant began to shoot, as also did Cunningham. Cunningham was severely wounded on the side of the face and head. There was testimony supporting the state's contention that the defendant, when he left the house and went out into the darkness, did so for the purpose of "getting" the police officer or officers.

The defendant's contention is that, under the conditions and circumstances surrounding him at the time of the shooting, he was acting in self-defense and shot to protect himself against what appeared to be a hold-up or an unlawful and dangerous assault upon him. He complains, principally, of the court's instructions. Among other instructions requested by the defendant and refused by the court, was one to the effect that a police officer or sheriff has no right or authority to arrest a person for misdemeanor without a warrant unless the offense is committed on view. Section 13-623 of the Revised Statutes, among other things, provides: "The chief or any other policeman shall at all times have power to make or order an arrest upon view of any offense being committed with or without process, for any offense," etc.

It is contended that instructions 20 and 21, given by the court, sufficiently and properly stated the defendant's contention. We are of the opinion they did not do so. They read:

"20. The jury are instructed that the defendant claims that whatever attack he made upon officer Ed Cunningham was made in self-defense, and you are instructed that the plea of self-defense is not available to the defendant in this case if you find, from the evidence, that Ed Cunningham was a police officer of the city of Hutchinson and at the time of the alleged assault was engaged in the line of his duty as such officer, provided you further find that the defendant knew, or should have known, or had knowledge or reasonable cause to believe at the time that said Cunningham was such police officer. A police officer of a city does not necessarily have to have a warrant to protect himself against an assault from a party that he is arresting or attempting to arrest. . It is sufficient if the officer, acting in good faith, has reasonable

The State v. Bowen.

cause to believe that the party he is arresting is or has been engaged in the commission of a crime, and the person so arrested or attempted to be arrested has no right under such circumstances to resist such officer or assault him or do him great bodily harm, even though he be innocent of any offense. There is no open season on police officers as such, and under circumstances like the above the party who was held up by such officer should submit to the arrest and not take or attempt to take the law in his own hands. So that in this case if you find, from the evidence beyond a reasonable doubt, that Ed Cunningham at the time of the alleged assault was a police officer of the city of Hutchinson and was engaged in the line of his duty as such officer, and that defendant knew or should have known, or had knowledge or reasonable cause to believe at the time, that said Cunningham was such police officer, then you will refuse to consider the plea of self-defense made by the defendant as an excuse or justification of any act or offense that you may find, if any, that he committed, and you will return a verdict upon the facts as you find them under the instructions herein, independent of and without considering the plea of self-defense.

"21. On the other hand, the jury are instructed that if you find that the plea of self-defense is available to the defendant, and that the defendant, acting in good faith, really believed and had cause to believe that he was being 'held up,' as testified to and claimed by him, with no knowledge or notice or reasonable ground to believe that Cunningham was an officer, and that the defendant was first attacked by the said Cunningham, as claimed by the defendant, then and in that case the defendant would not be obliged to flee, but had the right to stand and defend himself, using such force as was reasonably necessary for that purpose. But, however, before a person can assault another with a deadly weapon it must reasonably appear to the defendant that his own life is in imminent danger or that he is in imminent danger of great bodily injury from the hands of the person assaulted. No one can attack another lawfully because he may fear injury at some future time, and in this case you are instructed that in order for any assault of the defendant upon said Cunningham to have been done in self-defense even if you find that the plea of self-defense is available, the defendant must have believed, from the facts as they appeared to him at the time of the shooting, that he was in immediate and actual danger of his life or great bodily injury from Cunningham, and this belief must have rested upon reasonable grounds and the said Cunningham must have been making some attempt to execute his design to kill the defendant or to do him great bodily injury, or at least there must have been an apparent situation to do so, so that Cunningham thereby induced a reasonable belief in the mind of the defendant that he intended to immediately do great bodily injury to the defendant."

It is well settled that a person has the right to resist an unlawful arrest, and to use such force as is reasonably necessary for that purpose. The full right of self-defense exists in favor of a person being unlawfully arrested by an officer. If the officer is acting wrongfully and without authority his office affords no protection to him.

In *The State v. Dietz,* 59 Kan. 576, 583, 53 Pac. 870, it was said:

"It was there (*In re Kellam, Petitioner,* 55 Kan. 700) held that a police officer had no authority, except by warrant, to make an arrest for a misdemeanor not committed in his presence, but of which he had what he deemed to be reliable information from others, notwithstanding an ordinance of the city and a statute of the state both assumed to confer the power. A reconsideration of that case convinces us anew of the soundness of the rule declared and of the applicability and strength of the constitutional prohibitions upon arbitrary arrests there quoted."

In 5 C. J. 401, it is said:

"At common law, and under the statutes of many jurisdictions, although subject to statutory variations, it is the general rule that an officer has no authority whatever to arrest for a misdemeanor without a warrant, unless the offense is committed in his presence."

The language in instruction 20, "There is no open season on police officers," was unfortunately used. It was improper and no doubt influenced and prejudiced the jury against the defendant. Jurors naturally look to the judge for guidance, and the slightest act or word may tend to indicate his opinion or leaning and may at times exert a material and improper influence upon the jurors. The erroneous statement of the law as to the right of an officer to arrest in misdemeanor cases without a warrant, the improper language used, and failure to give an instruction properly stating the defendant's theory, were sufficient, when considered together, to require the granting of a new trial. (See *In re Kellam, Petitioner,* 55 Kan. 700, 701, 41 Pac. 960; 1 Bishop's New Criminal Law, 8th ed., p. 522; 2 R. C. L. 474, 549; 5 C. J. 425; 21 Cyc. 803*b;* 33 L. R. A., n. s., 150; 66 L. R. A. 375.) Other matters argued in the briefs need not be discussed.

The judgment is reversed and the cause remanded for a new trial.

MARSHALL, J., dissenting.